UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In the Matter of: | : | |
| | : | |
| VPI LIQUIDATION CORP.[1] | : | Case No. 06-10992 |
| f/k/a Viking Plastics, Inc. Et al | : | (Jointly Administered) |
| Debtor | : | CHAPTER 11 |
| WILLIAM GATES | : | Document No. 83 |
| Movant | : | |
| v. | : | |
| VPI LIQUIDATION CORP. ET AL | : | |
| HELLER FINANCIAL, INC. AND | : | |
| BAL GLOBAL FINANCE, LLC | : | |
| Respondents | : | |

APPEARANCES:

GUY C. FUSTINE, ESQ. AND RICHARD A. LANZILLO, ESQ., ERIE, PA, ATTORNEYS FOR DEBTORS
LAWRENCE C. BOLLA, ESQ., ERIE, PA, ATTORNEY FOR HELLER FINANCIAL, INC.
BRIAN I. SWETT, ESQ., CHICAGO, IL, ATTORNEY FOR HELLER FINANCIAL, INC.
MICHAEL KAMINSKI, ESQ. AND PAULA A. SCHMECK, ESQ., PITTSBURGH, PA, ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
STEVEN W. MEYER, ESQ., MINNEAPOLIS, MN, ATTORNEY FOR ANDERSEN CORP.
DAVID B. SALZMAN, ESQ. AND STANLEY E. LEVINE, ESQ., PITTSBURGH, PA, ATTORNEYS FOR WILLIAM GATES
HARRY W. GREENFIELD, ESQ., CLEVELAND, OH, ATTORNEY FOR CORPORATE REVITALIZATION PARTNERS, LLC
KATHLEEN ROBB, ESQ, PITTSBURGH, PA, ATTORNEY FOR THE UNITED STATES TRUSTEE

BENTZ, WARREN W.
UNITED STATES BANKRUPTCY JUDGE

September 21 , 2006

---

[1]The Debtors include: VPI Liquidation Corp., f/k/a Viking Plastics, Inc., Omega Pultrusions, Incorporated, Carsonite International Corporation and Omega Polymers Technologies, Inc.

1

OPINION[2]

On August 21, 2006 ("Petition Date") Omega Polymer Technologies, Inc. ("OPTI"), Omega Pultrusions, Inc. ("Omega"), Carsonite International Corp. ("Carsonite") and VPI Liquidation Corp. f/k/a Viking Plastics, Inc. ("Viking") filed voluntary Petitions under Chapter 11 of the Bankruptcy Code. By Order dated August 24, 2006, the Court granted the Debtors Motion for Joint Administration which consolidated the cases for procedural purposes only and Joint Administration.

On September 7, 2006, William Gates ("Gates") filed the within EMERGENCY MOTION TO AUTHORIZE THE APPOINTMENT OF A NEW CHIEF EXECUTIVE OFFICER, TERMINATE THE INTERIM CHIEF EXECUTIVE OFFICER AND THE ENGAGEMENT OF COUNSEL FOR THE DEBTOR-IN-POSSESSION ("Motion"). The Official Committee of Unsecured Creditors ("Committee") supports the Motion. The Debtors, Heller Financial, Inc. ("Heller"), BAL Global Finance, LLC (BAL") or (Heller and BAL, collectively, "Lenders") and Corporate Revitalization Partners ("CRP"), Dennis Gerrard ("Gerrard") and Andersen Corporation ("Andersen"), oppose the Motion. An evidentiary hearing was held on an Emergency Basis on September 13, 2006. All parties were afforded an opportunity to file Briefs and the matter is now ripe for decision.

FACTS

1, The Debtors

The Debtors are privately held, close corporations. OPTI is the parent organization and

---

[2]The within Opinion constitutes our findings of fact and conclusion of law.

2

100% shareholder of Omega, Carsonite and Viking. OPTI conducts its operations through Omega and Carsonite.[3] OPTI has limited assets and is not an operating company.

Omega is a pultrusions company with an office and manufacturing facility located in Aurora, Ohio. Its major customer is Andersen Company for whom Omega produces window and door frames.

Carsonite is a supplier of marking and safety products for the highway, utility and recreation markets. It operates two manufacturing facilities at separate locations in South Carolina.

## 2. Debt Structure

The Lenders are owed approximately $12 Million as of the Petition Date and appear to be secured by a first position on substantially all of the Debtors' assets.

Debtors were also parties to a Subordinated Loan Agreement dated May 29, 1998 (the "Subordinated Loan Agreement") between OPTI and Morningstreet Partners, L.P. ("Morningstreet"), as successor by assignment from Canterbury Mezzazine Capital, L.P. and Canterbury Detroit Partners, L.P. OPTI's obligations under the Subordinated Loan Agreement appear to be secured by junior liens on substantially all of the Debtors' assets.

As of the Petition Date, the Debtors owed approximately $7.73 million on the Subordinated Loan Agreement. On August 28, 2006, Liberty Acquisitions 825, L.C. ("Liberty") acquired the subordinated debt from Morningstreet.

---

[3] OPTI also conducted operations through Viking until August 3, 2006, when most of Viking's operating assets were sold prior to the bankruptcy filing.

Debtors' state that they also owe approximately $3.9 million in unsecured trade debt.

The estimated liquidation value of the Debtors' assets is $3.7 - 5.8 million. If the operations are sold as going concerns, the value may be $8 million.

### 3.  Events Leading to Bankruptcy Filings

CRP is a turnaround and crisis management firm. Gerrard is a partner in CRP. CRP and Gerrard were first engaged by the Debtors in February, 2006. Their role expanded between February and the Petition Date. As of July 5, 2006 the Debtors' Board of Directors appointed Gerrard as Interim CEO and engaged CRP to provide corporate restructuring and consulting service.

The Debtors, pursuant to an agreement dated August 19, 2006, expanded the scope of CRP's work "to provide adequate qualified personnel to perform services for client or on behalf of the client's bankruptcy 'Estate' for its shareholders, creditors or others." The Debtors authorized CRP to prepare the Debtors "for a Chapter 11 filing, §363 asset sale and/or orderly wind down."

On August 20, 2006, a special meeting was convened of the Debtors' Board of Directors. The Minutes of the Special Meeting reflect that the Lenders had advised Gerrard that they would no longer fund the Debtors' business operations unless the Debtors filed Chapter 11 cases and proceeded with an orderly liquidation. At the conclusion of the Special Meeting, the Board of Directors adopted a resolution to authorize the Chapter 11 filings.

On August 21, 2006, the Debtors filed their voluntary Petitions under Chapter 11 of the Bankruptcy Code. Subsequent to the Petition Date, between August 21, 2006 and August 28, 2006 all of the members of the Debtors' Board of Directors resigned.

4.  Liberty Acquisitions

Liberty is owned by Barbara Wortley.  Gates is the chairman or manager of Liberty. During the afternoon of August 28, 2006, Gates as "Chairman" of Liberty, transmitted an offer to purchase the principle assets of Omega.  The offer expressly provided that it would remain valid only until 5 P.M. EST on August 28, 2006.  Liberty's offer for Omega expired at 5 P.M. EST on August 28, 2006.

Later that same evening, Liberty entered into a Securities Purchase Agreement under which it purchased the rights of Morningstreet under the Subordinated Loan Agreement for a total purchase price of $100,000.  Liberty has paid $1,000 to Morningstreet and does not have to pay the remaining $99,000 unless it obtains control of OPTI.

As part of the Subordinated Loan Agreement between OPTI and Morningstreet, Morningstreet acquired, in addition to a Note, certain warrants and stocks.  Liberty acquired both the subordinated debt and the equity positions under the Securities Purchase Agreement with the understanding that those positions provided Liberty a controlling interest in the equity of OPTI and the right to appoint a director for OPTI.  When Liberty purchased Morningstreets' interest, it had not examined any of OPTI's corporate documents.  Liberty now acknowledges that it did not acquire a "controlling interest", but rather approximately 40% of the equity.

Although never provided to the parties prior to trial, Gates provides as Exhibits an undated Corporation Resolution for OPTI which is signed by Barbara Wortley as an OPTI Shareholder, Securities owned by Liberty and states that "effective the 28th day of August, 2006, William Gates is hereby appointed to the position of Director of the Company."  Similar Corporate Resolutions are provided for Omega and Carsonite, except that the effective date is

August 29, 2006 and both provide that "the Board of Directors of Omega Polymer Technologies, Inc. hereby appoints William Gates to the Position of Director of the Company," and they are signed by William Gates as the Board of Directors - Omega Polymer Technologies, Inc.

On August 29, 2006, Gates appeared unannounced at OPTI's principal offices in Aurora, Ohio, and announced to Gerrard that he was the "controlling shareholder" of OPTI and was assuming operational control of the company. Gates was accompanied by Joseph G. Wortley and David Griffith, the President of Liberty Protrusions. Gerrard stated that he would not abandon his position until sufficient proof was provided to support their claims.

Liberty Pultrusions ("Pultrusions") is a competitor of Omega. On August 29, 2006, counsel for Liberty transmitted an e-mail to counsel for the Lenders identifying Pultrusions as a "sister entity" to Liberty and advising the Lenders that Liberty had acquired a 50% interest in the equity of Omega with the right to appoint a director. At a hearing on August 31, 2006, counsel for Liberty stated that "Liberty Acquisitions 825, LLC is a corporation that has a sister company by the name of Liberty Pultrusions which has been engaged in a similar business to the Debtors for approximately forty years and has been engaged successfully in that business." Further, in Exhibit A to Liberty's motion filed August 30, 2006 at Document No. 56, Liberty identifies its address as "Liberty Acquisitions 825, L.C. with an address c/o Liberty Pultrusions at 1757 Lebanon School Road, West Mifflin, Pennsylvania..." In a statement to the Court during the August 31 hearing, Liberty's counsel stated, "what they [Liberty] were equally surprised was that as one of - - in the Debtors' business plan, what was identified as one of its eight largest competitors, that although they were told the company had been marketed as a going concern they had never been contacted or made aware that the business was to be available."

Issue

Whether Gates' designation and appointment as a Director of the Debtors is valid?

Discussion

The Debtors' corporate documents provide the requirements for the transfer of equity positions and for the appointment of Directors. Section 6(a) of the Stockholder and Close Corporation Agreement, as amended, provides that "the Stockholders shall not transfer or otherwise dispose of any Securities owned by them, or any interest therein, and any attempt to do so shall be void and ineffective for all purposes."[4] Section 6(a) continues and provides certain exceptions to the general rule which are not applicable here and further provides that even if any of the exceptions are applicable that, "[n]ot withstanding the foregoing, however, no such transfer shall be made, unless consented to by the Company, to any person, group or entity which may be deemed a competitor of the Company..."

Liberty is a competitor of OPTI and it never attempted to receive OPTI's consent to the transfer.

Section 5(a), as amended, provides that Canterbury shall be entitled to designate one director.[5] Amended Section 5(a) further provides:

> Each of the Stockholders agrees to vote its voting Securities to cause the election of directors as contemplated by this Section 5(a). A director who a Stockholder is entitled to designate may only be removed by such Stockholder, and such Stockholder shall be entitled to fill any vacancy created by the death, resignation or removal of a director designated by him/it. If any Stockholder (for purposes of

---

[4] "Securities" is a defined term meaning the various classes of Common Stock and Preferred Stock.

[5] Canterbury assigned its rights to Morningstreet and Gates purchased Morningstreet's rights.

7

this sentence, the Executives as a group will be treated as one Stockholder) who is entitled to designate director(s) holds less than 50% of the Securities held by such Stockholder at the close of business on the date hereof (other than by a transfer permitted by Section 6(a) below, such Stockholder shall lose all of his or its rights pursuant to this Section 5(a), and any directorship which is vacant and which had previously been filed by a nominee or designee of such Stockholder shall be elected by a vote of the stockholders in accordance with the Company's Certificate of Incorporation.

The Stockholders and Close Corporation Agreement provides the Stockholders the right to designate directors. As a competitor of OPTI, Liberty is prohibited from owing an equity interest in OPTI without OPTI's consent. Liberty is therefore not a Stockholder "entitled to fill any vacancy created by the death, resignation or removal of a director designated by him/it."[6] Since Liberty can not be a Stockholder, the Corporation Resolution appointing Gates as Director of OPTI signed by Barbara Wortley on behalf of Liberty as shareholder is invalid.

Even if the transfer of Morningstreet's equity to Liberty could somehow be deemed valid, Liberty's attempt to "appoint" Gates to OPTI's board fails under the Stockholders and Close Corporation Agreement. The ability of OPTI's stockholders to designate a director does not complete the process. Section (2)(a) of Amended Stockholders and Close Corporation Agreement which Amended §5(a) of the original agreement provides that "[e]ach Stockholder agrees to vote its voting Securities to cause the election of directors as contemplated by this Section 5(a)." There has never been a shareholder vote to elect Gates as director of OPTI.

Gates asserts that he is filling the vacancy left upon the resignation of Morningstreet's previous director and that since the prior director "simply appointed himself, and that

---

[6]Liberty asserts that by the acquisition of the subordinated debentures it acquired the right to designate a director even if a transfer restriction was applicable to Morningstreet's equity position. The assertion is without merit. The Shareholder and Close Corporation Agreement provides for a Stockholder to designate a director.

appointment was honored by other directors as stockholders" that Gates should be able to appoint himself.

It is possible that the prior appointment was made without following proper procedure. If so, it was done without question from any interested party.

We think it appropriate to follow the procedure set forth in the Corporate documents.

Section (2)(a) of the Amended Stockholder and Close Corporation Agreement which Amends §5(a) of the original agreement provides:

> If any Stockholder...who is entitled to designate director(s) holds less than 50% of the Securities held by such Stockholder at the close of business on the date hereof (other than by transfer permitted by Section 6(a) below), such Stockholder shall lose all of his or its rights pursuant to this Section 5(a) and any directorship which is vacant and which had previously been filled by a nominee or designee of such Stockholder shall be elected by a vote of the stockholders in accordance with the Company's Certificate if Incorporation.

Pursuant to Section (2)(a), once Morningstreet sold its stock, it lost "all of ... its rights pursuant to this Section 5(a)" and "any directorship which is vacant and which had previously been filled by a nominee or designee of such Stockholder shall be elected by a vote of the Stockholders in accordance with the Company's Certificate of Incorporation".

The Restated By-Laws of OPTI provides at Section 2.3:

> "any vacancy occuring in the Board ... may be filled by a majority of the remaining members of the Board, although such majority is less than a quorum or by a plurality of votes cast at a meeting of Stockholders..."

By the time Liberty executed its Securities Purchase Agreement with Morningstreet and attempted to appoint Gates as a director, all of the other directors had resigned. There were no remaining members to cast a vote to fill the vacancy and a meeting of the stockholders was not

9

held.

Gates directs our attention to Section 223 of Delaware's General Corporation Law which provides

> (a) Unless otherwise provided in the certificate of incorporation or by laws:
> (1) Vacancies [on the board] may be filled by a majority of the directors then in office, although less than a quorum, or by a sole remaining director

8. Del. C. 223.

There were no remaining members of the Board to fill the vacancy. Further, as previously discussed OPTI's bylaws provide otherwise.

Gates asserts that if Gates does not have the right or duty to govern the afffairs of the Debtors, then the Debtors have no board of directors, leaving a void in the process of corporate governance.

Under Delaware General Corporation Law, further Board action in the Debtors' bankruptcy cases is unnecessary:   Section 303(a) of the Delaware General Corporation Law provides:

> Any corporation of this State, an order for which relief with respect to which has been entered pursuant to Federal Bankruptcy Code, 11 U.S.C. §§101, et seq.,... may put into effect and carry out any decrees and orders of the court or judge in such bankruptcy proceeding and may take any corporate action provided or directed by such decrees and orders, without further action by its directors or stockholders.  Such power and authority may be exercised by ... by designated officers of the corporation ... with like effect as if exercised and taken by unanimous action of the directors and stockholders of the corporation.

8 Del. Code §303(a) (2006).

There is no dispute in this proceeding that CRP and Gerrard have acted as "designated officers of the Corporation" pursuant to resolutions adopted by the Board of Directors of OPTI on August 20, 2006.  Under Section 303(a) of the Delaware General Corporation Law there

10

exists no state corporate law impediment relative to further action to be taken by the Debtors' authorized representatives pursuant to Order or approval of this Court.

## Conclusions

For all of the foregoing reasons the EMERGENCY MOTION TO AUTHORIZE THE APPOINTMENT OF A NEW CHIEF EXECUTIVE OFFICER, TERMINATE THE INTERIM CHIEF EXECUTIVE OFFICER AND THE ENGAGEMENT OF COUNSEL FOR THE DEBTOR-IN-POSSESSION filed by William Gates will be denied. A separate Order will be entered.

/s/
Warren W. Bentz
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In the Matter of: | : | |
| | : | |
| VPI LIQUIDATION CORP. | : | Case No. 06-10992 |
| f/k/a Viking Plastics, Inc. Et al | : | (Jointly Administered) |
| Debtor | : | CHAPTER 11 |
| WILLIAM GATES | : | Document No. 83 |
| Movant | : | |
| v. | : | |
| VPI LIQUIDATION CORP. ET AL | : | |
| HELLER FINANCIAL, INC. AND | : | |
| BAL GLOBAL FINANCE, LLC | : | |
| Respondents | : | |

O R D E R

This 21st day of September, 2006, in accordance with the accompanying Opinion, it shall be and hereby is, Ordered that the EMERGENCY MOTION TO AUTHORIZE THE APPOINTMENT OF A NEW CHIEF EXECUTIVE OFFICER, TERMINATE THE INTERIM CHIEF EXECUTIVE OFFICER AND THE ENGAGEMENT OF COUNSEL FOR THE DEBTOR-IN-POSSESSION filed by William Gates is DENIED.

/s/
Warren W. Bentz
United States Bankruptcy Judge